**J. Gregg PRITCHARD,**
**Trustee, Appellant,**

v.

**UNITED STATES TRUSTEE, Appellee.**

**Civil Action No. 3–96–CV–0568–R.**

United States District Court,
N.D. Texas,
Dallas Division.

March 12, 1997.

Richard W. Ward, Law Office of Richard W. Ward, Dallas, TX, for J. Gregg Pritchard.

Mary Frances Durham, Office of the U.S. Trustee, Department of Justice, Dallas, TX, for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Before this Court is Appellant J. Gregg Pritchard's, Trustee ("Pritchard" or "Trustee") appeal of the Bankruptcy Court's March 7, 1996 Opinion in Bankruptcy Case 391–31371–HCA–7. This appeal arises out of the denial of Trustee's request for compensation based on unencumbered property transferred to unsecured creditors. For the foregoing reasons, the bankruptcy court's ruling is **REVERSED**.

## BACKGROUND FACTS

Appellant, J. Gregg Pritchard served as appointed trustee of the Chapter 7 bankruptcy estates of Wesley R. England and Charles

1. This settlement is memorialized by the bankruptcy court's September 29, 1993 order.

2. Debtors' attorney Philip Palmer is a self-proclaimed Appellee or "interested party" in his appeal. Together, he and the U.S. Trustee are referred to herein as "Appellees."

3. The Trustee calculates this amount to be $1,711,035.00 but the U.S. Trustee's calculations

England. The principal unsecured creditors of the Englands were the Federal Deposit Insurance Corporation (the "FDIC") and Abrams Bank. Neither bankruptcy estate had any secured creditors.

The Trustee worked out a settlement which would give the creditors debtors' assets (including a note and some real property) for their reduced allowed claims.[1] As part of the settlement, the Trustee agreed to seek a court order to transfer ownership of the remaining real property held by the estates to the FDIC and Abrams in satisfaction of their unsecured claims rather than continue efforts to sell the property. The Trustee maintains that the value of the properties transferred was equal to the amount of each creditor's claims. However the U.S. Trustee[2] argues that the value assigned to the transferred property is unrelated to the property, and was merely derived from the dollar amount of the creditor's claims. In any case, the transfer order was not appealed, and it therefore became a final order.

In his Final Report, filed in 1995, the Trustee requested that his commission be based not only on the money transferred, but also on the value of the real property distributed.[3] The U.S. Trustee filed a comment and participated in a hearing at which the bankruptcy court denied the Trustee's request for commission based on the property distributed, but allowed the trustee the maximum commission on the cash disbursed plus full reimbursement for requested expenses.[4] In this appeal the Trustee seeks an additional $51,331.06, based on the value of the property disbursed to creditors.

## ANALYSIS

The only issue on appeal is a question of law regarding a non-core matter and therefore, the standard of review is de novo.[5]

indicate the value of the property to be $1,711,701.99. No explanation is provided by either party to explain the $666.99 difference.

4. The court awarded Pritchard $38,009.39 in commission and $2,432.84 for expenses.

5. Bankruptcy Rule 9033(d).

That issue is whether the bankruptcy court incorrectly excluded constructive distributions of unencumbered property to unsecured creditors in calculating the chapter 7 Trustee's fees.

The Trustee argues that the bankruptcy court incorrectly applied the plain meaning of the word "money" in 11 U.S.C. § 326(a).[6] Rather, "money" in the context of this case, includes not just cash, but also the value of property distributed to unsecured creditors. The Trustee rests its argument on grounds of policy, legislative history, and equity.

The Trustee argues that the plain meaning of money conflicts with the policies of prompt administration of the estate and the payment of the maximum amount to creditors. Transferring the property saved the estate both the time and expense involved in a sale and subsequent disbursement of proceeds. Because the bankruptcy court's interpretation of "money" creates a disincentive for a trustee to transfer property to unsecured creditors, it frustrates these policies. Therefore, the Court should interpret the meaning of "money" to include unliquidated property turned over to an unsecured creditor in satisfaction of the bankrupt's debt under the theory of constructive disbursement.

However, Appellees maintain that the plain language of the statute should control.[7] "Money" is defined by Black's Law Dictionary (1990) as: "coins and paper currency used as circulating medium of exchange, and does not embrace notes, bonds, evidence of debt, or other personal or real estate." Moreover, Appellees argue that § 704 requires the Trustee to reduce estate property to money and then disburse the proceeds.

There is in fact case law supporting both positions. Appellant directs the Court to a Northern District of Texas 1995 decision[8] which applied the constructive disbursement theory in a case similar to the one *sub judice*. Judge Solis reasoned:

> to exclude from the calculation of a trustee's commission the value of an asset disbursed in satisfaction of a debt would create an antithetical incentive for trustees to mechanically jump through procedural hoops to insure their fair and reasonable compensation, regardless of the detrimental effects on the estate in prolonging the bankruptcy proceedings for the process of a sale and ultimate distribution to creditors.

Therefore, the Judge concluded, inclusion of property transferred (3/8 remainder interest) in the fee calculation was proper.

Judge Solis relied on two other opinions originating in Texas bankruptcy courts—*In re Stanley,* and *In re North American Oil & Gas, Inc.* Judge Sharp, of the Eastern District of Texas, held that the "proposition of constructive disbursement is viable and survives the transition from the Bankruptcy Act to the present Code." He added, "a hypertechnical reading of ... § 326(a) is only appropriate in cases where a Chapter 7 Trustee attempts to sell fully encumbered property or property in which there is a slight equity. In all other cases, a strict reading ... must be balanced by the policy considerations providing just and reasonable fees."[9] Judge Clark, sitting in the Western District of Texas, also recognized the use of constructive disbursement, saying that "to the extent the distribution could be easily and readily quantified in money, the transaction could justifiably be included in the base."[10]

---

6. This section reads:
   In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

7. *See U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

8. *Ebert v. Abramson,* 3:94–CV–0556–P (J. Solis).

9. *In re Stanley,* 120 B.R. 409, 413 (Bankr. E.D.Tex.1990).

10. *In re North American Oil & Gas, Inc.,* 130 B.R. 473, 480, n. 15 (Bankr.W.D.Tex.1990).

Indeed, in the case at bar, the Trustee worked out a deal with *unsecured* creditors to satisfy their claim in part with money and in part by transferring to them the debtors' unencumbered property, eliminating the time-consuming and costly step of selling the property. In contrast, Appellee has cited several cases which reject awarding Trustee fees based on constructive disbursement.[11] However, in these cases, the scenario invariably involved the transfer of encumbered property to the lien-holding, secured creditor. That is not the situation here. Another case that Appellees rely on is from the Eastern District of Louisiana which interpreted § 326(a) by its plain meaning. However, *In re Martin* involved the question of whether the Trustee's fee can exceed the maximum when it is especially deserved. That case does not address the question at issue here, that is what should be the bases for computing the maximum fee.

Appellant reviews the legislative history of § 326 and finds that there has long been support for allowing constructive disbursement both under the old Bankruptcy Act and the newer Code. His argument is that since, at the time the Bankruptcy Code was enacted the concept of constructive disbursement was well established, the failure of Congress to specifically change that interpretation when it enacted the Code suggests that Congress did not intend to change existing judicial interpretation. However, Appellees argue that the failure of Congress to resolve a split in authority regarding constructive disbursement is evidence that in fact a split never really existed. They maintain that those few cases which allowed constructive disbursement should be limited to their facts.

Moreover, the Appellees point to a proposed draft of § 326(a) which read: "the court may allow reasonable compensation of the trustee ... in an amount that does not exceed ... the value of the funds *and other property* disbursed or turned over by the trustee to parties in interest in the case...." Because this language fell victim to the cut-

ting room floor, Appellee argues that Congress considered compensating a trustee for the value of property distributed to an unsecured creditor in satisfaction of that creditor's claim, but rejected the idea.

This conclusion may be a hasty one. There are other situations which Congress may have been addressing with the proposed language. There has been a split in authority under the Code regarding how to compute the Trustee's fee when property is sold to a secured creditor "free and clear" of the lien versus when the buyer assumes the lien. Courts do not agree on whether the fee is calculated based on the gross proceeds or just the equity. Similarly, there is legislative history indicating that the bases for the fee "does not cover cases in which the trustee simply turns over the property to the *secured* creditor, nor where the trustee simply abandons the property and the *secured* creditor is permitted to foreclose."[12] Another debated issue in § 365(a)'s history was whether to include disbursements made to the *debtor* in calculating the Trustee's fee.[13] Again, at issue here is unencumbered property transferred to an *unsecured* creditor. Therefore, it is less than obvious that Congress was specifically addressing the situation at bar in the proposed but rejected § 365(a).

## CONCLUSION

Because this Court agrees with Judge Solis that it would be a perverse incentive to penalize the Trustee for taking the most efficient route to compensating unsecured creditors, it **REVERSES** the bankruptcy court's order awarding Trustee's fees, computed on only moneys disbursed. This matter shall be **REMANDED** for re-computation of the Trustee's fees using both moneys *and* property disbursed. It is so **ORDERED**.

11. Note, none of these cases originate in the Fifth Circuit.

12. House Report No. 95–595, 95th Cong., 1st Sess. 327 (1978).

13. In fact, this issue was resolved by the latest version of § 365(a) which specifically excludes disbursements to the debtor.